UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE HAYWOOD,

                     Plaintiff,

        v.

ANTHONY J. ANNUCCI, *et al*.,

                     Defendants.

No. 18-CV-10913 (KMK)

OPINION & ORDER

Appearances:

Tyrone Haywood
Stormville, NY
*Pro se Plaintiff*

Janice Powers, Esq.
Office of the New York State Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

       Pro se Plaintiff Tyrone Haywood ("Plaintiff") brings this Action, pursuant to 42 U.S.C.

§ 1983, against Acting Commissioner Anthony J. Annucci ("Annucci"), Sgt. Michael Blot, Jr.

("Blot"), Richard Flanagan ("Flanagan"), Eric Ferguson ("Ferguson"), and Sgt. Robert A.

Wahlquist ("Wahlquist") (collectively, "Defendants"), alleging that Defendants violated

Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments during incidents

that took place at the Green Haven Correctional Facility ("Green Haven") on August 1, 2018.

(*See* Am. Compl. (Dkt. No. 25).)  Before the Court is Annucci and Blot's ("Moving

Defendants") Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See*

Not. of Mot. (Dkt. No. 37).)  For the following reasons, the Motion is granted in part and denied

in part.

I.  Background

A.  Factual Background

The following facts, drawn from Plaintiff's Amended Complaint, are taken as true for the purpose of resolving the instant Motion.  *See Sierra Club v. Con-Strux LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (accepting "all factual allegations as true" for the purposes of a motion to dismiss and deeming a complaint to include "any written instrument attached to it as an exhibit" (citations omitted)).[1]

On August 1, 2018, Green Haven was "locked down" and the water was turned off as officers searched each cell.  (*See* Compl. 9 (Dkt. No. 2).)  Inmates were asked to "strip down to their underwear" and "walk in their shower slippers to the back of the tier holding their mattress and pillow."  (*Id.*)  Plaintiff alleges that Annucci, as Commissioner of New York State's Department of Corrections and Community Supervision, "is aware or should be" of Green Haven's practice of requiring inmates to walk to the back of the tier in only underwear and

---

[1] Where appropriate, the Court also considers factual allegations contained in Plaintiff's opposition papers, to the extent that those allegations are consistent with the Amended Complaint.  *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) ("[W]here a pro se plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint." (citation, italics, and quotation marks omitted)); *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) ("[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as his opposition memorandum." (citations omitted)).  Similarly, although "the Court uses the Amended Complaint to inform its understanding of the alleged facts . . . , where it appears that Plaintiff inadvertently omitted facts or individuals mentioned in the Complaint, the Court will use the Complaint to fill in the gaps."  *Smith v. Dinoia*, No. 19-CV-4471, 2020 WL 1189492, at *1 n.2 (S.D.N.Y. Mar. 12, 2020).

All citations to Plaintiff's submissions reflect the page number contained in the ECF stamp.  All quotations from these submissions reflect minor corrections in grammar, punctuation and spelling.

slippers, in front of female officers, during cell searches.  (*See* Pl.'s Mem. of Law in Opp'n to

Mot. ("Pl.'s Mem.") 2 (Dkt. No. 39); Compl. 2.)

Before Plaintiff's cell was searched, Plaintiff spoke with non-party Sgt. Funk ("Funk")

about the underwear he was wearing, and Funk "agreed that [it] would be inappropriate [for

Plaintiff] to wear [his underwear] down the tier, as female officers were present and [Plaintiff's]

cell was to be searched by female officer Torres."  (Pl.'s Mem. 1; *see also* Compl. 10.)  Funk

therefore told Plaintiff that he could "wear sweatpants over [his] underwear," and instructed him

to "inform the officers of such when the time came to have [his] cell searched."  (Compl. 10.)

However, when Plaintiff "relayed this information" to the officers who came to search his cell,

they explained that they had to "check with" an individual known as "Wally."  (*Id.*)[2]  According

to Plaintiff, the officers then began looking for Blot.  (*Id.*)

When Blot arrived, he ordered Plaintiff to "turn around."  (*Id.*)  Plaintiff complied, but

was nevertheless handcuffed and removed from his cell.  (*See id.*)  Blot then told Plaintiff, "you

don't make the rules, I do," directed Ferguson and Flanagan to take Plaintiff away, and

whispered to Wahlquist.  (Compl. 10; Am. Compl. 3.)[3]  Ferguson and Flanagan, accompanied by

Wahlquist, then "led [Plaintiff] down the stairs in slippers and pushed [him] down the last six

steps," causing Plaintiff "extreme pain" and exacerbating a previous injury to Plaintiff's knee

---

[2] It is possible that "Wally" referred to Sgt. Wahlquist.

[3] In his Pre-Motion Letter, Plaintiff describes an interaction that, while similar to the
allegations in the Complaint and Amended Complaint, differs in some particulars.  For example,
Plaintiff adds that Blot informed Plaintiff that "because two officers had been assaulted by an
inmate who was off his medication, . . . Annucci [had] provided his subordinates with carte
blanche, to do [with inmates] as [they] pleased."  (Letter from Plaintiff to Court (Aug. 29, 2019)
("Pl.'s Pre-Mot. Letter") 2 (Dkt. No. 34).)  Plaintiff further alleges that Blot told Flanagan to
"show [Plaintiff] who was in charge" and whispered something in his ear.  (*Id.*)  By contrast, in
his Complaint, Plaintiff alleged that Blot whispered something in Wahlquist's ear.  (*See* Compl.
10.)

and back.  (Compl. 11.)  Wahlquist then followed Plaintiff downstairs, and said, "so you think you're a goddamn lawyer, huh?  Well, I'm gonna teach you to keep your smartass mouth shut and do as you're told."  (*Id.*)  As Plaintiff was led down a hallway, an official from the Office of Special Investigations ("OSI") in Albany attempted to intervene and "demanded to know where [Plaintiff] was being taken," but was rebuffed by Wahlquist.  (*Id.*)

Plaintiff was then "escorted to the visiting room search area."  (Am. Compl. 3.)  There, Plaintiff was ordered to strip, to "pick up [his] feet and wiggle [his] toes," and to "bend over and spread [his] cheeks."  (Compl. 12.)  As Plaintiff complied, Flanagan "took his index finger and thrust it up [Plaintiff's] anus."  (*Id.* at 13; Am. Compl. 3.)  When Plaintiff questioned Flanagan's conduct, Flanagan "smirk[ed] at [Plaintiff] and sa[id], 'I thought I seen something.'"  (Compl. 13.)  Flanagan then ordered Plaintiff to lift his penis; but even as Plaintiff complied, Flanagan "forcefully grab[bed] [Plaintiff's] penis and tug[ged] on it" and said, "[n]o, I mean lift it all the way up."  (*Id.*)  When Plaintiff objected, Flanagan "began to punch [Plaintiff] repeatedly in the face and chest," and "would have maced [Plaintiff] had the OSI [official] not intervened."  (*Id.*)  As the assault occurred, Wahlquist blocked the OSI officer's entry to the room.  (Am. Compl. 4.)

Subsequently, Blot directed a search of Plaintiff's cell, and claimed to have found a weapon.  (*See* Pl.'s Pre-Mot. Letter 2.)  Based on this false allegation, Blot sent Plaintiff to "the box" where he turned off Plaintiff's water and denied Plaintiff a pillow and mattress.  (*Id.*; *see also* Compl. 13–14.)  Blot also denied Plaintiff medical care "to cover up his co-worker's misbehavior," and ordered his subordinates to destroy Plaintiff's radio, clippers, and legal work.  (Pl.'s Pre-Mot. Letter 2.)  Four days later, Plaintiff was provided with what was left of his property, much of which was destroyed or missing.  (Compl. 15.)

Plaintiff now seeks compensatory damages relating to the assaults and destruction of his property.  (Am. Compl. 6.)  Plaintiff also seeks an injunction directing correctional officers to wear name tags at all times and to record searches.  (*Id.*)

B.  Procedural Background

On November 21, 2018, Plaintiff filed his initial Complaint and an Application to proceed in forma pauperis ("IFP").  (*See* Dkt. Nos. 1–2.)  On January 10, 2019, IFP status was granted.  (*See* Dkt. No. 5.)  On January 14, 2019, the Court directed the Attorney General to ascertain the identities of the then-unnamed Defendants and to provide the information to Plaintiff.  (*See* Dkt. No. 7.)

On January 25, 2019, Plaintiff filed a purported amended complaint, but swiftly withdrew it, noting that such a filing was premature until the unnamed officers' identities were made available to him by the Office of the Attorney General.  (*See* Dkt. Nos. 11–12.)  On April 24, 2019, Plaintiff identified Richard Flanagan and Eric Ferguson as the individuals he was seeking to sue.  (*See* Dkt. No. 21.)  On May 1, 2019, the Office of the Attorney General responded with an address at which Flanagan and Ferguson could be served.  (*See* Dkt. No. 22.)  On May 21, 2019, Plaintiff filed an Amended Complaint, adding Flanagan and Ferguson as additional Defendants.  (*See* Am. Compl.)  On August 22, 2019, Moving Defendants filed a letter motion seeking leave to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (*See* Dkt. No. 33.)  Pursuant to the Court's Scheduling Order, (*see* Dkt. No. 36), on October 9, 2019, Moving Defendants filed the instant Motion and accompanying papers, (*see* Not. of Mot.; Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 38).)  On October 31, 2019, Plaintiff filed his Opposition.  (*See* Pl.'s Mem.)  On December 12, 2019, Moving Defendants filed their Reply. (*See* Defs.' Reply Mem. in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 40).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous

6

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [Amended Complaint]." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, as noted, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v.*

*Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff[']s possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

### B.  Analysis

The Court construes the Amended Complaint (and related papers) as raising claims under the Eighth and Fourteenth Amendments, alleging excessive force and violations of procedural due process and the right to privacy.  Moving Defendants argue that Plaintiff has failed to allege their personal involvement in a constitutional violation; that Plaintiff has failed to adequately allege the deprivation of a recognized liberty interest; and that a lack of pillows and other alleged cell conditions do not amount to a constitutional violation.  (*See generally* Defs.' Mem.)  The Court considers these arguments only to the extent necessary to decide the instant Motion.

#### 1.  Annucci

##### a.  The Alleged Assault

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F. 3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference

> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Id.* at 139 (italics and quotation marks omitted) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Here, Plaintiff makes no mention of Annucci in the body of his Complaint or Amended Complaint.  (*See generally* Compl.; Am. Compl.)  Generally, this is "sufficient grounds for dismissal."  *Garcia v. Griffin*, No. 18-CV-8761, 2020 WL 3871211, at *3 (S.D.N.Y. July 9, 2020); *see also Oquendo v. Quality Choice Corr. Healthcare*, No. 16-CV-1828, 2017 WL 3927293, at *4 (S.D.N.Y. Sept. 6, 2017) ("Neither County [d]efendant is even mentioned by name or position in the body of the [c]omplaint, which is itself ground for dismissal." (citations omitted)).  However, Plaintiff does mention Annucci in his Pre-Motion Letter.  In particular, Plaintiff alleges that Blot "informed [Plaintiff] and others that because two officers had been assaulted by an inmate, . . . Annucci provided his subordinates with carte-blanche, to do [with inmates] as [they] pleased."  (Pl.'s Pre-Mot. Letter 2.)  In light of Plaintiff's pro se status, the Court may consider such an allegation.  *See Alsaifullah*, 2013 WL 3972514, at *4 n.3 (permitting a court to "consider materials outside the complaint to the extent that they are consistent with the allegations in [a pro se] complaint").

However, even considering this allegation, the Court concludes that it is insufficient to plausibly establish Annucci's involvement in the alleged assault.  First, it is well established that the general allegations that a supervisor granted leeway to subordinate officers are insufficient to allege personal involvement.  *See Garcia*, 2020 WL 3871211, at *3 (explaining that generic allegations such as that a superior "encouraged an environment where officers had a carte

blanche, blatantly assaulting inmates," were conclusory and insufficient (quotation marks omitted)); *Ceparano v. County of Suffolk*, No. 10-CV-2030, 2013 WL 6576817, at *7 (E.D.N.Y. Dec. 13, 2013) (explaining that an allegation that a defendant "creat[ed] an environment that encouraged . . . violations" was conclusory (quotation marks omitted)).  Second, Plaintiff offers no factual allegations suggesting that Annucci was present for, knew of, or even had any reason to know about the alleged assault, or that Annucci established a "policy" of such assaults or had particular knowledge of any similar, previous such assaults.  *Cf. Grullon*, 720 F. 3d at 139 (discussing ways of establishing a defendant's personal involvement in a constitutional tort). Accordingly, insofar as Plaintiff seeks to hold Annucci liable for the alleged assault, such claims are dismissed for lack of personal involvement.  *See Thomas v. DuBois*, No. 19-CV-7533, 2020 WL 2092426, at *3 (S.D.N.Y. Apr. 30, 2020) (dismissing claims against an official for failure to properly plead that official's personal involvement).

### b.  Privacy Claims

To the extent that Plaintiff argues that Annucci violated his constitutional right to privacy by implementing certain search procedures, this claim fails as well.  In this respect, Plaintiff alleges only that Green Haven maintained a policy requiring inmates to walk across the tier in their underwear during cell searches.  (Pl.'s Mem. 2*; see also* Compl. 5.)  However, the Supreme Court has long "recognized that deterring the possession of contraband depends in part on the ability to conduct searches without predictable exceptions."  *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 327–28 (2012).  Moreover, "[t]he Supreme Court has repeatedly confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests."  *Jean-Laurent v. Lawrence*, No.12-CV-

1502, 2013 WL 1129813, at \*7 (S.D.N.Y. Mar. 19, 2013) (citation and quotation marks omitted); *see also Hudson v. Palmer*, 468 U.S. 517, 524 (1984) ("[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights." (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)). Accordingly, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." *Florence*, 566 U.S. at 328 (citation and quotation marks omitted). Thus, "recent cases in [the Second] Circuit and elsewhere addressing inmates' right to privacy suggest that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex—which would include possible glimpses on the way to the shower—may be permissible." *Jean-Laurent*, 2013 WL 1129813, at \*8 (citation and quotation marks omitted) (collecting cases).

In light of these standards and related precedent, Plaintiff fails to plausibly allege that the policy he challenges rises to the level of constitutional violations. First, Plaintiff acknowledges that he and other inmates were permitted to wear underwear as officers searched their cells. (*See* Pl.'s Mem. 2; Compl. 5.) Such a policy is substantially less invasive than search policies that courts have held survive constitutional scrutiny. *See Smith v. City of New York*, No. 14-CV-5934, 2015 WL 3929621, at \*2 (S.D.N.Y. June 17, 2015) ("Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal." (citation and quotation marks omitted)); *Israel v. City of New York*, No. 11-CV-7726, 2012 WL 4762082, at \*3 (S.D.N.Y. Oct. 5, 2012) (finding intake searches that required inmates to strip naked permissible and that "the presence of other inmates and officers, males and females, does not

11

alter this determination" (citations omitted)); *Myers v. City of New York*, No. 11-CV-8525, 2012

WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012) (holding that suspicion-less strip searches of non-

felony pretrial detainees at intake and upon leaving the facility for court appearances were

constitutional); *see also Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir.1981) ("Most people . . .

have a special sense of privacy in their genitals, and involuntary exposure of them in the

presence of people of the other sex may be especially demeaning and humiliating.").  Second,

Plaintiff also acknowledges that the search occurred while Green Haven was "locked down,"

(Compl. 9), apparently in response to a serious security incident, (*see* Pl.'s Pre-Mot. Letter 2

(quoting Blot as saying that "two officers had been assaulted by an inmate")).  This too

undermines Plaintiff's claim, as the search is on its face related to a valid security concern.  *See*

*Perez v. Ponte*, 236 F. Supp. 3d 590, 624 (E.D.N.Y. 2017) (explaining that "in order to state a

viable claim that a strip search was unconstitutional, a plaintiff must allege facts suggesting that

the search did not serve a legitimate penological purpose, but was instead designed to intimidate,

harass, or embarrass him" (quotation marks and citation omitted)), *adopted by* No. 16-CV-645,

2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017); *see also Wolfish*, 441 U.S. at 559 ("Courts must

consider the scope of the particular intrusion, the manner in which it is conducted, the

justification for initiating it, and the place in which it is conducted." (citations omitted)).

Accordingly, insofar as Plaintiff seeks to challenge Green Haven's alleged policy of having

inmates walk in their underwear during a general cell search, such a challenge fails to state a

claim.

     2.  Blot

     The Court construes Plaintiff's Amended Complaint, as supplemented by his initial

Complaint and Opposition papers, as asserting three potential constitutional violations by Blot:

(1) that he was personally involved in the assault carried out by Flanagan, Ferguson, and

Wahlquist; (2) that he made false allegations resulting in Plaintiff being subject to discipline; (3)

and that he deprived Plaintiff of his property in violation of the Due Process Clause.  The Court

evaluates each claim in turn.

<u>a.  Excessive Force</u>

Blot argues that Plaintiff's allegations against Blot are vague and conclusory and thus fail

to plausibly allege Blot's personal involvement in the assault.  (Defs.' Mem. 5.)  The Court

disagrees.  Plaintiff alleges that Blot told Plaintiff, "you don't make the rules, I do," directed

Ferguson and Flanagan to take Plaintiff away, and whispered something to Wahlquist.  (Compl.

10; Am. Compl. 3.)  Immediately following this interaction, Ferguson, Flanagan, and Wahlquist

allegedly assaulted Plaintiff twice, first by pushing him down six stairs, and then by conducting

an unnecessarily invasive body cavity "search," and subsequently beating Plaintiff, all over the

objections of an OSI official.  (Compl. 11–13; Am. Compl. 3–4.)  Drawing all reasonable

inferences in Plaintiff's favor, it is plausible that Blot ordered the assaults that immediately

followed his warning to Plaintiff and his whispering to Wahlquist.  Such an order, of course,

suffices to establish Blot's personal involvement in these assaults.  *See Provost v. City of

Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (explaining that a defendant "direct[ly]

participat[es]" in a constitutional violation when he "order[s] . . . others to do the unlawful acts"

even if he is not physically present).  Accordingly, Plaintiff's Excessive Force claim against Blot

survives the instant Motion.[4]

---

[4] Moving Defendants argue that Plaintiff raised a conspiracy claim for the first time in his Opposition papers, and therefore urge the Court to dismiss on that basis.  (*See* Defs.' Reply 3.)  However, the Court concludes that Plaintiff's Amended Complaint—when read together with his initial Complaint and Pre-Motion Letter—can be liberally interpreted as suggesting such a claim.  (*See* Compl. 10 (describing Blot "whisper[ing]" with Wahlquist immediately prior to the

### b.  Due Process Claim

"To successfully state a claim under § 1983 for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process."  *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 275 (N.D.N.Y. 2018) (citations omitted).  The Second Circuit has held that "[p]rison discipline implicates a liberty interest [only] when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation and quotation marks omitted).  In determining whether prison discipline "imposes atypical and significant hardship on the inmate," courts consider "the length of disciplinary confinement" and "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions."  *Aikens v. Royce*, No. 14-CV-663, 2015 WL 7758892, at *4 (S.D.N.Y. Dec. 1, 2015) (citation and quotation marks omitted).

Here, Plaintiff alleges that Blot falsely claimed that he found a weapon in Plaintiff's cell, causing Plaintiff to be confined in the "box."  (*See* Pl.'s Pre-Mot. Letter 2.)  However, Plaintiff fails to allege the duration of this confinement.  (*See generally id.*)  Similarly, while Plaintiff alleges that Blot "had the water in my cell shut off [and] denied me a mattress and/or a pillow," (*id.*), Plaintiff indicates that such deprivations lasted only a few days, (*see* Compl. 13–14).  Such allegations do not suffice to state a Due Process claim.  Indeed, courts have long held that brief limitations on showers and similar temporary prison restrictions do not generally constitute an "atypical and significant hardship" and so do not implicate Plaintiff's liberty interests.  *See Stimpson v. Comm'r Correction Office*, No. 16-CV-520, 2017 WL 326314, at *7 (D. Conn. Jan.

---

assaults).)  Accordingly, for the same reasons as those stated above, the Court declines to dismiss such a claim at this stage of the proceedings.

23, 2017) (explaining that although a plaintiff "could not shower at one point for four days and did not have access to items of personal property[,]" such deprivations did "not constitute a significant hardship" (citation omitted)); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("[A] two-week suspension of shower privileges does not suffice as a denial of basic hygienic needs." (quotation marks and citation omitted)); *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 219 (N.D.N.Y. 2001) (explaining that week-long "restrictions placed on his diet, water, and placement behind a cell shield" did not implicate an inmate's protected liberty interests); *Black v. Selsky*, 15 F. Supp. 2d 311, 315 (W.D.N.Y. 1998) (explaining that inmates in the "Special Housing Unit" are allowed only two showers per week, but that this does not implicate the Due Process Clause). Accordingly, "[b]ecause Plaintiff has not alleged facts suggesting that he was deprived of a liberty interest, his procedural due process claim fails." *See Allah v. Depaolo*, No. 17-CV-6313, 2019 WL 1649021, at *3 (S.D.N.Y. Apr. 4, 2019) (citation omitted).

### c. Deprivation of Property

The Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of . . . the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *see also Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470, at *13 (S.D.N.Y. Sept. 29, 2014) (same). In fact, "the state's action is not complete unless and until it provides or refuses to provide a suitable post-deprivation remedy." *Acevedo*, 2014 WL 5015470, at *13 (citation and quotation marks omitted). Moreover, in applying this principle, "the Second Circuit has determined that 'New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action.'" *Id*. (italics omitted) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)); *see also Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317,

at *11 (S.D.N.Y. Aug. 15, 2012) ("New York provides . . . an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, and conversion." (citations omitted)), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012).  District courts thus "routinely dismiss claims by inmates who assert that they were deprived of property by corrections officers in New York."  *Davis v. Collado*, No. 16-CV-7139, 2018 WL 4757966, at *16 (S.D.N.Y. Sept. 30, 2018) (collecting cases); *see also West v. City of New York*, No. 13-CV-5155, 2014 WL 4290813, at *6 (S.D.N.Y. Aug. 28, 2014) (holding that "the deprivation of [the inmate's] property interest in his mail is not a cognizable constitutional injury" given the availability of "adequate state post-deprivation remedies" under New York law (quotation marks omitted)); *JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *32 (S.D.N.Y. Apr. 24, 2014) (dismissing an inmate's deprivation of property claim because "the existence of an adequate post-deprivation state remedy precludes a due process claim under § 1983" (citations omitted)), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Green v. Niles*, No. 11-CV-1349, 2012 WL 987473, at *6 (S.D.N.Y. Mar. 23, 2012) (dismissing an inmate's claim because "a prison's loss of an inmate['s] property . . . will not support a due process claim redressable under § 1983 if adequate state post-deprivation remedies are available" (citation and quotation marks omitted)).

Here, Plaintiff alleges only that Defendant Blot searched his cell outside of his presence, resulting in destruction of his property, including his "radio, clippers, and . . . legal work."  (Pre-Mot. Letter 2.)  Plaintiff provides no additional details as to how the property was destroyed and "makes no allusion to a facility-wide practice."  *Davis*, 2018 WL 4757966, at *16.  Because Plaintiff thus suggests the deprivation of property was "effected through random and unauthorized conduct of a state employee"—as opposed to "established state procedures"—

Plaintiff has an adequate post-deprivation remedy under state tort law.  *Hudson*, 468 U.S. at 532–33.  "Consequently, he cannot sustain a Fourteenth Amendment due process claim based on the deprivation of his personal property."  *Davis*, 2018 WL 4757966, at *16 (citation omitted); *see also Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir. 1988) (noting that the "mere deprivation of personal property would not rise to the level of a constitutional injury").  Accordingly, Plaintiff's Due Process claim for deprivation of his property is dismissed.[5]

### III.  Conclusion

For the foregoing reasons, the Motion is granted in part and denied in part.

Plaintiff's claims against Annucci are dismissed, as are his Due Process claims against Blot (with respect to Blot's alleged false accusations and Blot's alleged destruction of Plaintiff's property).  However, Plaintiff's excessive force claims against Blot survive the instant Motion.

Because of Plaintiff's pro se status, and because this is the first adjudication on the merits of Plaintiff's claims against Annucci and Blot, the dismissal is without prejudice.  If Plaintiff wishes to file a second amended complaint, Plaintiff must do so within 30 days of the date of this

---

[5] Insofar as Plaintiff seeks to advance a separate claim for a violation of his right to access to the courts based on the destruction of his legal papers, such a claim fails as well.  To state a claim for denial of access to the courts, "a plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim."  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997)).  Thus, courts in this district have held that a plaintiff is required to "demonstrate actual injury and specify which legal matter [the] [d]efendants' alleged tampering hindered him from pursuing."  *Shepherd v. Fisher*, No. 08-CV-9297, 2017 WL 666213, at *39 (S.D.N.Y. Feb. 16, 2017).  Here, because Plaintiff "does not allege any facts that indicate that [the destruction of his legal papers] prevented him" from pursuing any particular claim, or otherwise hindered his access to the courts, any claim for a violation of his right to access the courts cannot withstand the instant Motion.  *Corley v. City of New York*, No. 14-CV-3202, 2017 WL 4357662, at *8 (S.D.N.Y. Sept. 28, 2017); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that an "actual-injury" requirement is a "constitutional prerequisite" of an access-to-courts claim, and that as a result, "the inmate therefore must go one step further and demonstrate that the alleged [denial of access] hindered his efforts to pursue a legal claim").

Opinion & Order. Plaintiff should include within that second amended complaint all changes to correct the deficiencies identified in this Opinion & Order that Plaintiff wishes the Court to consider. Plaintiff is advised that the second amended complaint will replace, not supplement, the Amended Complaint. The Court therefore warns Plaintiff that its discretionary decision to consider the factual allegations included in his earlier complaints and Opposition papers will not be repeated. The second amended complaint must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 37), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:    September 24, 2020
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

18