UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE HAYWOOD,

                              Plaintiff,

            v.

ANTHONY J. ANNUCCI, *et al*.,

                              Defendants.

No. 18-CV-10913 (KMK)

OPINION & ORDER

Appearances:

Tyrone Haywood
Stormville, NY
*Pro Se Plaintiff*

Janice Powers, Esq.
Avninder Aujla, Esq.
Office of the New York State Attorney General
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

　　Tyrone Haywood ("Plaintiff"), proceeding pro se, brings this Action, pursuant to 42

U.S.C. § 1983, against the Acting Commissioner of the New York Department of Corrections

and Community Service ("DOCCS") Anthony J. Annucci ("Annucci"), Sgt. Michael Blot, Jr.

("Blot"), Corrections Officer ("C.O.") Richard Flanagan ("Flanagan"), C.O. Eric Ferguson

("Ferguson"), and Sgt. Robert A. Wahlquist ("Wahlquist"; collectively, "Defendants"), alleging

that Defendants violated Plaintiff's constitutional rights arising from physical and sexual assaults

that allegedly occurred at the Green Haven Correctional Facility ("Green Haven") on August 1,

2018.  (*See* Second Am. Compl. ("SAC") (Dkt. No. 45).)[1]  Before the Court is Defendants'

Motion for Summary Judgment (the "Motion").  (Not. of Mot. (Dkt. No. 84).)  For the following

reasons, the Motion is granted.

I.  Background

A.  Factual Background

The following facts and procedural history are taken from the Parties' statements

pursuant to Local Civil Rule 56.1, specifically Defendants' 56.1 Statement, (Defs.' Local Rule

56.1 Statement ("Defs.' 56.1") (Dkt. No. 85)), and the admissible evidence submitted by the

Parties.[2]  The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.

*Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quotation marks omitted).

---

[1] Defendants incorrectly believe that the "operative pleading is an Amended Complaint filed on 5/21/2019," (Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 1 (Dkt. No. 86)), referencing Plaintiff's Amended Complaint, (Dkt. No. 25), which was filed *before* this Court ruled on several defendants' motion to dismiss, (*see generally* Op. & Order ("Op.") (Dkt. No. 44)).  This incorrect reading of the procedural posture or operative pleading does not impact the Court's analysis.

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quotation marks omitted) (citation omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (adopting the same rule).

Plaintiff did not file a 56.1 statement.  (*See generally* Dkt.)  However, "'Pro se litigants are not excused from meeting the requirements of Local Rule 56.1,' and '[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.'"  *Thomas v. DeCastro*, No. 14-CV-6409, 2021 WL 5746207, at *1 n.1 (S.D.N.Y. Dec. 1, 2021) (quoting *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021); then quoting *T.Y.*, 584 F.3d at 418);

1.  General Lockdown Search Protocol

When a general lockdown is commenced, "all incarcerated persons [a]re informed that everyone would be searched."  (Defs.' 56.1 ¶ 3.)  During this search, corrections officers search the cells and frisk inmates while "at least two Sergeants are present per block to supervise and answer questions."  (*Id.* ¶ 4.)  Pursuant to the search, each prisoner is to "strip down to his boxers or underwear, carry his pillow and mattress while in boxers to be escorted by at least two Correction Officers to a contraband detector called Cell Sense."  (*Id.* ¶ 5.)  Once Cell Sense clears an inmate, the inmate "returns to his cell, gets dressed in his New York State issued prison uniform . . . , stands outside of his cell with his hands in his pockets and watch[es] the search of his cell."  (*Id.* ¶ 7.)  In addition to the Sergeants, personnel from the Office of Special Investigations ("OSI") observe the searches and "document and investigate any problems that

---

*see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (adopting the same rule).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record" to decide the instant Motion on its merits, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted); *see also Thomas*, 2021 WL 5746207, at *1 n.1 (collecting cases); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1 [statement]."); *Pagan v. Corr. Med. Servs.*, No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response); *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (citation and italics omitted)); *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of [the] [p]laintiff's pro se status, the [c]ourt overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record.").

arise with staff or prisoners." (*Id.* ¶ 9.)  If neither the search of the prisoner's cell nor the search of the prisoner's person reveals contraband, "the prisoner is locked back into his cell to await the conclusion of the lockdown before any prisoner movement resumes."  (*Id.* ¶ 8.)

Where an inmate refuses to be searched via the Cell Sense machine, he or she may be required to undertake a strip frisk search, which, pursuant to DOCCS regulations, entails "a visual inspection of clothing, body, and body cavities," meaning an inmate uses his hands to show his mouth, hair, ears, armpits, testicles, buttocks, and anus but "consists of no physical contact."  (*Id.* ¶¶ 20, 25, 27–28.)  "If[,] during a strip frisk search, an Officer observes contraband inside the body of a prisoner, the C.O. must call a superior officer and video equipment must be obtained to record the retrieval of the contraband."  (*Id.* ¶ 31.)  Additionally, if any physical interaction occurs, the officer must complete "an unusual incident report or use of force paperwork" documenting such contact.  (*Id.* ¶ 33.)

### 2.  Strip Frisk Search of Plaintiff

On August 1, 2018, "there was a facility wide lockdown and search" at Green Haven following the assault of two corrections officers several days earlier.  (*Id.* ¶¶ 2, 3.)  On that day, Plaintiff was a state prisoner in DOCCS's custody at Green Haven.  (*Id.* ¶ 1.)  At approximately 8:00 a.m. on that day, pursuant to the lockdown, officials began searching F-block with the necessary staff and OSI personnel present.  (*See id.* ¶¶ 10–11.)  When Flanagan sought to begin the search of Plaintiff's person and cell, Plaintiff "refused to go to the Cell Sense in his boxers but wanted to wear his own sweatpants and refused to exit his cell to be escorted to the Cell Sense."  (*Id.* ¶ 12.)  After this refusal, "Flanagan explained this is standard protocol," but "Plaintiff was argumentative."  (*Id.* ¶ 13.)  To avoid escalation and emboldening other prisoners to follow suit, (*see id.* ¶ 15), Plaintiff "had to be checked for contraband through an alternative

means before his cell block was cleared," (*id.* ¶ 16).  Therefore, Blot, who had approached Plaintiff's cell upon his initial refusal to proceed to Cell Sense, authorized a strip frisk search and radioed for Plaintiff to be escorted to a different room where this search would be performed. (*See id.* ¶¶ 14, 18–19.)

Wahlquist, OSI Investigator Francisco Ortiz ("Ortiz"), Flanagan, and Ferguson escorted Plaintiff to the "transportation search room, a room used for searches before a prisoner is sent to Court or to another facility."  (*Id.* ¶¶ 20–23.)  The Parties dispute the nature of the escort. Defendants assert that this escort was done undertaken "without incident."  (*Id.* ¶ 21.)  Plaintiff, however, asserts that during this time, he was "pushed [] down the last [six] steps" on his way to being searched.  (Decl. of Janice Powers ("Powers Decl.") (Dkt. No. 86) Ex. L ("Pl.'s Depo. Tr.") 45:10–11 (Dkt. No. 86-10).)

The search room "has a curtain that divides it."  (*Id.* ¶ 24.)  Wahlquist, Ortiz, and Ferguson waited outside of the curtain while Flanagan conducted the strip frisk search of Plaintiff.  Again, the Parties dispute what transpired during the search.  Plaintiff avers that during this search, Flanagan touched Plaintiff's penis, repeatedly punched Plaintiff, and pushed Plaintiff against a wall.  (Pl.'s Depo. Tr. 36:24–38:25.)  On the other hand, Defendants contend that Flanagan ordered Plaintiff to follow the strip frisk search protocols, that Plaintiff complied without incident and "was not combative during the search," and that Flanagan did not touch Plaintiff at all.  (Defs.' 56.1 ¶¶ 27–31.)  Additionally, Wahlquist, Ortiz, and Ferguson—who remained on the other side of the curtain throughout the search, (*see id.* ¶ 34)—aver that they heard no "loud noise, screaming, arguing, reactions or anything that would indicate there was a physical or sexual assault occurred," (*id.* ¶ 36).

Following the completion of the search, Plaintiff was ordered to get dressed.  (*Id.* ¶ 33.)

Upon doing so, the curtain was drawn back, revealing Wahlquist, Ortiz, and Ferguson to Plaintiff

once again.  (*Id.* ¶ 34.)  Plaintiff was then "escorted to a new cell to allow the continuity of the

search on F-block."  (*Id.* ¶ 37.)  Plaintiff was not given a disciplinary ticket nor did he "undergo

any disciplinary measures."  (*Id.*)  Finally, no unusual incident report or use of force paperwork

was filed.  (*Id.* ¶ 33.)

### 3.  Plaintiff's Administrative Relief

Nine days after the search, Plaintiff filed a PREA complaint stating he was "assaulted in

the visiting room strip search area."  (Powers Decl. Ex. J ("Grievance Docs.") 2 (Dkt. No. 86-

10).)  Plaintiff also visited with a medical professional and reported right knee and back pain.

(Powers Decl. Ex. G. ("DOCCS Medical Records") 40–41 (Dkt. No. 86-7).)  Plaintiff did not

report rectal pain or bleeding.  (*See id.* at 41.)  No additional medical treatment was "rendered to

Plaintiff beyond noting his self-reported statements."  (Defs.' 56.1 ¶ 39; *see also* DOCCS

Medical Records 41.)

OSI investigated the PREA complaint, but the investigation was closed in 2019 as

"unfounded."  (Defs.' 56.1 ¶¶ 40–41.)  Plaintiff filed one grievance related to the August 1,

2018, lockdown "alleg[ing] an assault on staff" and which was assigned number GH-90049-18.

(*Id.* ¶¶ 46, 47.)  Pursuant to relevant New York State law, because the grievance "alleged staff

misconduct by DOCCS staff, it was forwarded to the Green Haven Correctional Superintendent."

(*Id.* ¶ 49.)  On April 2, 2019, the Superintendent issued a decision holding "that the claims were

without merit."  (*Id.* ¶ 52.)  This decision was delivered to Plaintiff at cell F1-128.  (*Id.* ¶ 53.)

"The appeal statement portion of the Superintendent decision was not completed by

Plaintiff or returned . . . for appeal to [Central Office Review Committee ('CORC')]."  (*Id.* ¶ 54.)

6

Further, "CORC records reveal that Plaintiff did not appeal any facility-level grievance determinations to CORC" regarding the incident in question.  (*Id.* ¶ 55.)

4.  Plaintiff's Administrative Relief In Unrelated Matters

Since 2013, Plaintiff has filed five grievances unrelated to the allegations in this Action. (*Id.* ¶ 45.)  These grievances were filed in "2013, 2014, and 2015 and [were] related to a mess hall job, documents confiscated, a CD he wanted to listen to, and CD and DVDs in his personal property."  (*Id.* ¶ 48.)  Plaintiff appealed one of these prior grievances—related to a mess hall work assignment in 2015—to exhaustion.  (*Id.* ¶ 57.)

### B.  Procedural Background

On November 21, 2018, Plaintiff filed his initial Complaint and an Application to proceed in forma pauperis ("IFP").  (*See* Dkt. Nos. 1–2.)  On January 10, 2019, IFP status was granted.  (*See* Dkt. No. 5.)  On January 14, 2019, the Court issued a *Valentin* order directing the New York Attorney General's Office to ascertain the identities of the then-unnamed Defendants and to provide the information to Plaintiff.  (*See* Dkt. No. 7.)

On January 25, 2019, Plaintiff filed a purported amended complaint, but swiftly withdrew it, noting that such a filing was premature until the unnamed officers' identities were made available to him by the Office of the Attorney General.  (*See* Dkt. Nos. 11–12.)  On April 24, 2019, Plaintiff identified Richard Flanagan and Eric Ferguson as the individuals he was seeking to sue.  (*See* Dkt. No. 21.)  On May 1, 2019, the Office of the Attorney General responded with an address at which Flanagan and Ferguson could be served.  (*See* Dkt. No. 22.)  On May 21, 2019, Plaintiff filed an amended complaint, adding Flanagan and Ferguson as additional Defendants.  (*See* Dkt. No. 25.)

On October 9, 2019, Annucci and Blot filed a Motion To Dismiss and accompanying papers.  (*See* Dkt. Nos. 37–38.)  On October 31, 2019, Plaintiff filed his Opposition.  (*See* Dkt. No. 39.)  On December 12, 2019, Annucci and Blot filed their Reply.  (*See* Dkt. No. 40.)

The Court issued an Opinion & Order on September 25, 2020, dismissing Plaintiff's claims against Annucci as well as Plaintiff's Due Process claims against Blot while permitting Plaintiff's Excessive Force claims against Blot to proceed.  (Op. 17.)  The Court's dismissals were without prejudice, and the Court permitted Plaintiff to file a second amended complaint within 30 days.  (*Id.* at 17–18.)

Plaintiff availed himself of this right, filing the SAC on October 28, 2020.  (*See* Dkt. No. 45.)  Defendants filed an Answer on Nov. 18, 2020.  (*See* Answer (Dkt. No. 46).)

On October 14, 2021, Defendants filed the instant Motion and accompanying papers.  (*See* Not. of Mot.; Defs.' 56.1; Powers Decl.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 87).)  Plaintiff filed two letters in opposition.  (*See* Pl.'s Mem. of Law in Opp. of Mot. ("Pl.'s Opp. I") (Dkt. No. 90); Pl.'s Second Mem. of Law in Opp. of Mot. ("Pl.'s Opp. II") (Dkt. No. 91).)[3]  Defendants filed a Reply.  (Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 92).)  Plaintiff filed a Sur-Reply.  (Pl.'s Sur-Reply in Opp. of Mot. ("Pl.'s Sur-Reply") (Dkt. No. 93).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[3] Based on the Court's review, it appears that Dkt. No. 89 is a different inmate's letter regarding a different case that was improperly filed to this Action's docket.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion, [a non-movant] need[s] to create more than a 'metaphysical' possibility that [her] allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary

materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . . ").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (citation omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).  However, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'"  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . . "); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham*, 848

F.2d at 344; *accord Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at

*7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se

litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest,"

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation

marks omitted).  "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the

usual requirements of summary judgment, and a pro se party's bald assertions unsupported by

evidence . . . are insufficient to overcome a motion for summary judgment."  *Houston v.

Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d

346, 351 (E.D.N.Y. 2014) (alterations, italics, and quotation marks omitted); *see also Flores v.

City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

    B.  Analysis

    Defendants argue that summary judgment is warranted for all claims of non-sexual

physical assault or misconduct as having been improperly exhausted.  (*See* Defs.' Mem. 3–5;

Defs.' Reply Mem. 1–3.)  Defendants also argue that summary judgment regarding Plaintiff's

remaining claims against Annucci, Wahlquist, Blot, and Ferguson for lack of personal

involvement.  (*See* Defs.' Mem. 5–8.)  Finally, Defendants aver that summary judgment should

be granted on the merits regarding Plaintiff's claims against Flanagan.  (*See* Defs.' Mem. 8–15.)

    1.  Plaintiff's Eighth Amendment Claims Regarding Sexual, Physical Assault

    Defendants contend that all claims regarding Plaintiff's physical assault allegations must

be dismissed because Plaintiff failed to satisfy his requirements under the Prison Litigation

Reform Act ("PLRA") to exhaust any and all available administrative remedies prior to pursuing

federal judicial redress.  (*See* Defs.' Mem. 3–5; Defs.' Reply Mem. 1–3.)  Defendants argue in

the alternative that no genuine issue of material fact exists regarding the alleged misconduct.

(*See generally* Defs.' Mem.; Defs.' Reply Mem.)  Plaintiff rebuts Defendants' first argument by saying that he was unable to appeal the Superintendent's decision because he was never served with the decision insofar as the ruling was sent to the wrong cell, inhibiting his ability to appeal it.  (*See generally* Pl.'s Opp. I; Pl.'s Opp. II; Pl.'s Sur-Reply.)  Additionally, Plaintiff, liberally construed, argues that the incidents of misconduct are all interrelated and therefore encompassed in the grievance.  (*See* Pl.'s Sur-Reply 1.)  The Court reviews these arguments in turn.

### a.  PLRA, PREA Exhaustion Requirements

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  *Ross v. Blake*, 578 U.S. 632, 638 (2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)).  This requirement applies to "all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Moreover, the PLRA "requires proper exhaustion, which means using all steps that the prison grievance system holds out, and doing so *properly* . . . . Proper exhaustion demands compliance with a prison grievance system's deadlines and other critical procedural rules."  *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (alterations, citations, and quotation marks omitted).

To satisfy their exhaustion requirements, prisoners "must exhaust all levels" of DOCCS's Inmate Grievance Process ("IGP").  *Little v. Mun. Corp., City of New York*, No. 12-CV-5851, 2017 WL 1184326, at *11 (S.D.N.Y. Mar. 29, 2017).  The IGP provides for a three-step

grievance process.  *See* 7 N.Y.C.R.R. §§ 701 *et seq.*; *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c))).  Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence.  7 N.Y.C.R.R. § 701.5(a)(1).  Once filed, the representatives of the Inmate Grievance Resolution Committee ("IGRC") have up to 16 calendar days to resolve the grievance informally.  *Id.* § 701.5(b)(1).  If the matter is not satisfactorily resolved, the IGRC conducts a hearing to either answer the grievance or make a recommendation to the superintendent, *id.* § 701.5(b)(2)(i), which is scheduled within 16 days after receipt of the grievance, *id.* § 701.5(b)(2)(ii).  The second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the IGRC's written response, although the appealing party can seek an exception to the time limit.  *See id.* § 701.5(c)(1).  The third and final step is to appeal the superintendent's decision to the CORC, which the prisoner must do within seven days of the superintendent's written response to the grievance.  *Id.* § 701.5(d)(1)(i).  Here, too, an inmate may request an exception to the time limit.  *See id.*  Given the aforementioned requirement to "exhaust all levels" of administrative remedies, *Little*, 2017 WL 1184326, at *11, "only after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted," *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).

The PLRA "contains its own, textual exception to mandatory exhaustion."  *Ross*, 578 U.S. at 642.  As the Supreme Court has explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.  And that limitation on an inmate's duty to exhaust . . . has real content. . . .  [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* (quoting *Booth*, 532 U.S. at 738).

The Supreme Court has identified at least "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643.  First, an "administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643–44.  Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.  The Second Circuit has noted "that the three circumstances discussed in *Ross* do not appear to be exhaustive," but has declined to "opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use." *Williams*, 829 F.3d at 123 n.2.  Nonetheless, these three circumstances "guide the Court's inquiry." *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

Notwithstanding the PLRA and DOCCS's familiar framework, "[h]owever, for complaints regarding sexual abuse or harassment, DOCCS has established a different procedure." *Sheffer v. Fleury*, No. 18-CV-1180, 2019 WL 4463672, at *4 (N.D.N.Y. Sept. 18,

14

2019) (citing DOCCS Directive 4040 § 701.3(i); 7 N.Y.C.R.R. § 701.3(i)).[4]  Revised in 2014

pursuant to the Prison Rape Elimination Act ("PREA"), *see Henderson v. Annucci*, No. 14-CV-

445, 2016 WL 3039687, at *3 (W.D.N.Y. Mar. 14, 2016), *report and recommendation adopted*,

2016 WL 3031353 (W.D.N.Y. May 27, 2016), 7 N.Y.C.R.R. § 701.3 creates a relaxed

exhaustion requirement for allegations concerning incidents of sexual assault.  Specifically, "an

inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual

harassment to satisfy the [PLRA] exhaustion requirement." *Id.* § 701.3(i) (citation omitted).

Instead,

> [A]ny allegation concerning an incident of sexual abuse or sexual harassment
> shall be deemed exhausted if official documentation confirms that: [] an inmate
> who alleges being the victim of sexual abuse or sexual harassment reported the
> incident to facility staff; in writing to Central Office Staff; to any outside agency
> that the Department has identified as having agreed to receive and immediately
> forward inmate reports of sexual abuse and sexual harassment to agency officials
> under the PREA Standards; or to the Department's Office of the Inspector
> General[.]

*Id*. (citations omitted).  Thus, if an inmate files a grievance concerning sexual abuse or sexual

harassment, "[t]he complaint shall be deemed exhausted upon filing." *Id*.  Finally, "[a] sexual

abuse or sexual harassment complaint may be submitted at any time." *Id.*

### b.  Exhaustion

As stated earlier, Plaintiff filed one grievance regarding the events of August 1, 2018:

Grievance No. GH-90049-18, which reads in relevant part:

> I was taken from F-block during the search and assaulted in the visiting room strip
> search area.  I was told a weapon was found in my cell and that ticket or misbehavior
> report was never served after I was detained from Wednesday the 1st to Monday
> [the] 6th.  I am now being informed that I am keep[-]locked again until I receive my
> I.D. [b]ack[,] which nobody can seem to locate at the moment.

---

[4] Directive 4040 is codified at 7 N.Y.C.R.R. §§ 701 et seq.  Accordingly, references to
one another are synonymous.

(Grievance Docs 2.)

Defendants interpret Plaintiff as having raised four distinct instances or forms of assault in his deposition: "that he was pushed down the stairs, that he was punched in the face, that he was pushed into a wall, and that his penis was pulled during the strip frisk."  (Defs.' Reply Mem. 2; *see also* Pl.'s Depo. Tr. 36:24–37:3 (detailing Flanagan's alleged touching of Plaintiff's penis); *id.* at 37:8–38:15 (detailing allegations that Flanagan punched Plaintiff); *id.* at 38:23–25 (detailing allegations that Flanagan pushed Plaintiff against a wall); *id.* at 45:10–47:5 (detailing allegations that Flanagan pushed Plaintiff down the stairs).)  Given this interpretation, as well as Defendant's interpretation of Plaintiff's PREA complaint as speaking *only* to the allegation of sexual assault, Defendants argue that Plaintiff failed to file a grievance regarding all three of the non-sexual assault allegations, namely the push down the stairs, the punch to the face, and the push into a wall.  (*See* Defs.' Mem. 5; Defs.' Reply Mem. 2.)  And while Defendants omit any reference whatsoever to Plaintiff's due process claims regarding his destruction of property and placement in the Special Housing Unit ("SHU"), the Court interprets Defendants' argument as also applying to these issues, namely that Plaintiff should have—but did not—exhaust his administrative remedies regarding such alleged infractions, thereby compelling dismissal.

Plaintiff, by contrast, argues that this is "[o]ne grievance [that] was filed addressing this [o]ne incident, for which one lawsuit was filed and currently pending before this court . . . ." (Pl.'s Sur-Reply 1 (emphases in original).)  Essentially, Plaintiff aims for the word "assaulted" to cover multiple forms, acts, and/or incidents, and believes his lone grievance to have been exhausted.[5]  Moreover, Plaintiff argues that he could not have continued to exhaust his grievance

---

[5] Plaintiff asserts in his Sur-Reply that Defendants' argument regarding the distinct grievances "should not be entertained by this court as it is not only inaccurate, [but] it was never

because the decision was not returned to him, thereby frustrating his efforts to appeal.  (*See* Pl.'s Opp. I 2; Pl.'s Opp. II 1.)  Both Parties are right, and both parties are wrong.

The Court is unaware of binding Second Circuit precedent regarding exhaustion requirements and PREA grievances when sexual assaults are at issue alongside with non-sexual misconduct.  However, both a close reading of the regulation's text as well as policy rationale underpin the belief that non-sexual acts done in furtherance of the sexual abuse falls under this lower standard.  First, New York law provides that the relaxed standard governs "any allegation *concerning* an incident of sexual abuse or sexual harassment."  7 N.Y.C.R.R. § 701.3(i) (emphasis added).  Non-sexual acts done to enable, further, or magnify the sexual misconduct, though, "concern[]" it, thereby falling under this standard.  Second, forcing an inmate to file separate grievances for actions that occurred simultaneously and in concert with one another would have the adverse effect of forcing an inmate to determine himself whether these related grievances assaults were "sufficient under PREA prior to relying upon the language in Directive 4040"; as one court described it, such a scenario would be "untenable."  *Henderson*, 2016 WL 3039687, at *5.

Indeed, the Court's conclusion is bolstered by several district courts that have reviewed this question and similarly concluded that any non-sexual act "intertwined" with sexual abuse is subject to the relaxed grievance standards.  *See Sheffer v. Fleury*, No. 18-CV-1180, 2019 WL 3891143, at *4 (N.D.N.Y. Aug. 19, 2019) (holding that the lesser PREA grievance standard governs the reporting of "other events which are necessarily intertwined with [sexual

---

advanced by the 'AG' previously."  (Pl.'s Sur-Reply 1.)  This is inaccurate.  Defendants clearly make this point in their opening memorandum.  (*See* Defs.' Mem. 5 ("[T]he allegations of separate incidents of use of force . . . require exhaustion.").)  Therefore, the Court proceeds to the merits of this argument.

misconduct], such as a physical assault during the course of the abuse; the failure of correctional staff to intervene to stop the rape; or acts or failures to act making a jail official legally accountable for the sexual abuse"), *report and recommendation adopted*, 2019 WL 4463672, at *6 (N.D.N.Y. Sept. 18, 2019) (considering events that are "necessarily intertwined with the underlying sexual assault" to be subject to the "relaxed exhaustion requirement"); *see also Clark v. Gardner*, No. 17-CV-366, 2021 WL 1200328, at *27 (N.D.N.Y. Mar. 8, 2021) (quoting *Sheffer* and reaching the same conclusion), *report and recommendation adopted*, 2021 WL 1198199 (N.D.N.Y. Mar. 30, 2021).  Therefore, the Court concludes that all non-sexual misconduct "intertwined" with the sexual assault remains covered by the lenient exhaustion requirements.

### i.  Intertwined Events: Wall Push, Punches

Two of the alleged non-sexual events at issue—the push against the wall and the punch to the face—fall into this category.  Plainly, these two actions are "'part and parcel' of the sexual assault claim," *Sims v. Ellis*, No. 15-CV-6355, 2022 WL 446505, at *3 (W.D.N.Y. Feb. 14, 2022), insofar as, construed liberally, these actions were alleged to have been undertaken in an effort to enable the underlying sexual assault, (*see* SAC 3; Pl.'s Depo. Tr. 38:23–25).  Moreover, when read in a light most favorable to non-movant, "the grievance was sufficient to impart the necessary information on prison officials to investigate Plaintiff's complaints and learn about" these two incidents, *Jimenez v. Sommer*, No. 14-CV-5166, 2016 WL 3181155, at *2 (S.D.N.Y. June 3, 2016), as Plaintiff alleges that these acts occurred in concert with the sexual assault and within a matter of seconds in the same location, (*see* SAC 3; Pl.'s Depo. Tr. 38:23–25).  *Cf. Robinson v. Knibbs*, No. 16-CV-3826, 2019 WL 2578240, at *5 (S.D.N.Y. June 24, 2019) ("[The] [p]laintiff's failure to specifically identify [a defendant] and explicitly discuss the

interaction at issue are not necessarily fatal." (citation omitted)).  Therefore, because there is no genuine dispute as to whether Plaintiff filed the PREA complaint, the Court finds that Plaintiff has sufficiently exhausted his administrative remedies with respect to the sexual assault and the two, related non-sexual assaults.  *See Boyd v. Doe #1*, No. 18-CV-1333, 2021 WL 7542409, at *11 (N.D.N.Y. Nov. 30, 2021) (recommending a finding of administrative exhaustion where "the evidence suggest[s] that [the] plaintiff did file [a]n initial grievance regarding the underlying sexual assault with the IGRC"), *report and recommendation adopted*, 2022 WL 823648 (N.D.N.Y. Mar. 18, 2022); *see also* 7 N.Y.C.R.R. § 701.3(i).

### ii.  Non-Intertwined Events: Stair Push, Due Process Claims

The Court concludes that the alleged search of Plaintiff's cell, the destruction of his property, his confinement in SHU, and the shove down the stairs are not intertwined with the sexual assault allegation, and therefore not governed by the more lenient grievance standard.

With regard to the alleged shove down the stairs, the grievance states that the assault occurred "in the visiting room."  (Grievance Docs. 2.)  By definition, Wahlquists's alleged actions—pushing Plaintiff down the stairs, (*see* Pl.'s Depo. Tr. 45:10–47:5)—could not have occurred "in the visiting room."  Moreover, there is no suggestion that the push was taken in an effort to enable or further the sexual misconduct.  Therefore, Plaintiff's claim regarding this shove was not subject to the more lenient PREA claim.  *Cf. Cooper v. A. Annucci*, No. 18-CV-762, 2020 WL 8474802, at *10–12 (N.D.N.Y. Nov. 9, 2020) (separating claims of sexual abuse from non-intertwined claims, including claims of retaliation therefrom, holding that such retaliatory and non-sexual claims could not be subject to the more lenient PREA claim, and ultimately finding that the plaintiff failed to exhaust the non-sexual abuse claims), *report and recommendation adopted sub nom. Cooper v. DeGraff*, 2021 WL 235946 (N.D.N.Y. Jan. 25,

2021).  And because there is no dispute that Plaintiff failed to file a separate grievance regarding

this distinct use of force, Defendants' Motion regarding any claim speaking to this incident must

be granted and the claim itself dismissed for failure to exhaust administrative remedies.  *See*

*Johnson v. Conley*, No. 17-CV-70, 2018 WL 4224076, at *6 (D. Conn. Sept. 5, 2018)

(dismissing all claims for failure to exhaust "except for those that were within the scope of [the]

plaintiff's PREA complaint"), *appeal dismissed*, No. 18-2933 (2d Cir. Nov. 26, 2018).[6]

Regarding the search of Plaintiff's cell, the finding of a knife, and Plaintiff's subsequent

confinement in SHU, the Court similarly holds that this claim is not "intertwined" with the

underlying sexual assault.  While these actions are alleged to have occurred simultaneously,

these concerns are not "part and parcel" with the sexual assault; such intertwinement is more

appropriately limited to where, for example, "the sexual assault was carried out *by physically*

*assaulting* [the individual], perhaps to overcome his resistance to the sexual conduct."  *Abreu v.*

*Miller*, No. 15-CV-1306, 2018 WL 4502007, at *2 (N.D.N.Y. Sept. 20, 2018) (emphasis added),

*order amended and superseded on reconsideration on other grounds*, 2019 WL 761639

(N.D.N.Y. Feb. 21, 2019).  Thus, Plaintiff's grievance with regard to these due process concerns

(i.e. the destruction of his property and his wrongful solitary confinement) extended only to his

initial grievance.

Plaintiff essentially argues that further exhaustion was unavailable because the decision

regarding his grievance was never delivered to him but was instead delivered to the wrong cell.

---

[6] In the alternative, and as discussed in far more detail below, one shove undertaken to
effectuate the search "is unlikely to be repugnant to the conscience of mankind, and will not
amount to excessive force under Second Circuit law."  *Adilovic v. County of Westchester*, No.
08-CV-10971, 2011 WL 2893101, at *6 n.12 (S.D.N.Y. July 14, 2011) (citations omitted)
(quoting *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000)).

(*See* Pl.'s Opp. I 2; Pl.'s Opp. II 1.)  However, the facility's purported mistake in sending the grievance to the wrong cell is of no matter.

Plaintiff has previously filed grievances, including at least one to exhaustion, is not in dispute, (*see* Defs.' 56.1 ¶¶ 45, 57), and courts have repeatedly found that where a plaintiff has filed parallel grievances, he cannot plausibly argue unavailability, as filing the prior grievances "demonstrat[es] his familiarity with the procedures, as well as their availability," *Powell v. Schriro*, No. 14-CV-6207, 2015 WL 7017516, at *8 (S.D.N.Y. Nov. 12, 2015); *see also Grafton v. Hesse*, 783 F. App'x 29, 31 (2d Cir. 2019) (summary order) ("The evidence [the incarcerated plaintiff] does provide—several of his past grievances containing the notation 'Grievance Accepted'—undermines his argument that prison staff had made the prison grievance system a dead end by not collecting and processing grievances as required."); *Williams v. Sposato*, No. 13-CV-4247, 2019 WL 5310222, at *8 (E.D.N.Y. Oct. 21, 2019) (granting summary judgment for the defendants because the grievance system was not a dead end where record evidence indicated that the plaintiff "either received the relief he sought, or other appropriate relief which he accepted, for . . . four . . . grievances"); *accord Scott v. Greene*, No. 20-CV-1904, 2022 WL 903293, at *9 (D. Conn. Mar. 28, 2022) ("The Court also notes that [the] [p]laintiff had used the grievance process at least nine times in relation to other issues prior to initiating this lawsuit, supporting [the] [d]efendants' assertion that the grievance process was not 'unavailable' to [the] [p]laintiff." (citations omitted)).

Moreover, New York law makes clear that "if a plaintiff does not receive a response from the IGRC, he normally must file an appeal with the prison superintendent and then with the CORC to fully exhaust his grievance.  Indeed, the IGP explicitly states that 'matters not decided within the time limits may be appealed to the next step.'" *Little*, 2017 WL 1184326, at *11

(quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Dabney v. Pegano*, 604 F. App'x 1, 4–5 (2d Cir.

2015) (summary order) ("The IGP provides a clear timeline for appealing grievances to the

CORC, which applies even when the prisoner does not receive a timely decision from the IGRC

or a superintendent.  [The] [p]laintiff therefore had an unimpeded path to the CORC[.]" (citation

omitted)); *Medina v. Kaplan*, No. 16-CV-7223, 2018 WL 797330, at *4 (S.D.N.Y. Feb. 8, 2018)

("Prisoners in the custody of DOCCS must exhaust all levels of the [IGP] process even if they do

not receive a response from the [IGRC] or superintendent."); *Shaw v. Ortiz*, No. 15-CV-8964,

2016 WL 7410722, at *3 (S.D.N.Y. Dec. 21, 2016) (same); *Mena v. City of New York*, No. 13-

CV-2430, 2016 WL 3948100, at *3 (S.D.N.Y. July 19, 2016) ("[T]he law is well-settled that the

failure to take an available administrative appeal, even when the initial grievance receives no

response, constitutes a failure to exhaust available administrative remedies." (quoting *Garvin v.

Rivera*, No. 13-CV-7054, 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015))).  Therefore,

Plaintiff's failure to appeal his grievance regarding any due process violations to the CORC,

coupled with his prior navigation of the IGP, forecloses any argument that administrative

remedies were unavailable and compels the conclusion that he failed to exhaust his

administrative remedies with regard to his due process claims.  Accordingly, Defendants' Motion

is granted as to this issue.

   The Court turns now to whether the alleged sexual assault and intertwined physical

assault give rise to an Eighth Amendment violation.

### 2.  Plaintiff's Eighth Amendment Claims

   Defendants argue that summary judgment is warranted regarding Plaintiff's assault

claims as failing both the objective and subjective requirements of an Eighth Amendment

violation.  (*See* Defs.' Mem. 8–15.)  Broadly speaking, Plaintiff disagrees with Defendants'

interpretation, rebutting that "the triers of fact are the jury[,] not an Attorney General[,] [who] was not present and only has second[-]hand accounts as the only defense, because there are no records as [] [D]efendants were trying to cover up their wrong doing."  (Pl.'s Opp. II 2.)

a.  Applicable Law

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect."  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *see also Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) ("To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective.").  The subjective prong may be met by a showing that a defendant acted with a "sufficiently culpable state of mind," *Crawford*, 796 F.3d at 256 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)), meaning his or her "actions [can be] characterized by 'wantonness,'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)). Additionally, "the definition of "wantonness" varies according to the circumstances alleged."  *Id.* "Furthermore, the wantonness of conduct does not depend upon its effect on the prisoner, but rather 'upon the constraints facing the *official*.'"  *Id.* (emphasis in original) (quoting *Davidson v. Flynn*, 32 F.3d 27, 30 n.2 (2d Cir. 1994)).

To adjudicate whether the objective standard has been met, i.e., whether the force was undertaken "maliciously and sadistically for the very purpose of causing harm," the Supreme Court instructs courts to consider: (1) "the extent of injury inflicted"; (2) "the need for the application of force"; (3) "the relationship between the need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on

23

the basis of the facts known to them." *Whitley v. Albers*, 475 U.S. 312, 320–321 (1986)

(quotation marks and citations omitted); *see also Hudson*, 503 U.S. at 7 (applying the *Whitley*

factors to determine "whether the use of force could plausibly have been thought necessary"

against an inmate as part of the Eighth Amendment inquiry (citation omitted)).

b.  Application

i.  Sexual Assault

"[P]rison officials looking for contraband may subject inmates to reasonable strip

searches and cavity searches," and, "[i]ndeed[,] prison security and safety may require frequent

searches of an intensely personal nature." *Crawford*, 796 F.3d at 258 (citing *Bell v. Wolfish*, 441

U.S. 520, 560 (1979)).  When the alleged misconduct arises in the context of a legitimate

penological search, a plaintiff may therefore be unable to satisfy the subjective prong, as the

defendant performed the conduct at issue in "a good-faith effort to maintain or restore discipline"

rather than to "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.  For that

reason, "[i]n determining whether a prison official has violated an inmate's Eighth Amendment

rights by committing a sexual assault during a search, 'the principal inquiry is whether the

contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or

by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate.'"

*Torres v. City of New York*, No. 17-CV-6604, 2019 WL 7602181, at *9 (S.D.N.Y. Aug. 14,

2019) (quoting *Crawford*, 796 F.3d at 258), *report and recommendation adopted*, 2019 WL

4784756 (S.D.N.Y. Sept. 30, 2019).

To categorize the actions one way or another, courts look to the "timing" of the search,

the "comments made" during the search, and "subsequent comments made by the officers."

*Shepherd v. Fisher*, No. 08-CV-9297, 2017 WL 666213, at *18 (S.D.N.Y. Feb. 16, 2017) (citing

24

*Crawford*, 796 F.3d at 258–59); *see also Washington v. Fitzpatrick*, No. 20-CV-911, 2021 WL 966085, at *4 (S.D.N.Y. Mar. 15, 2021) ("To determine the purpose of a jail official's conduct, courts look to the timing of the official's actions and comments made by the jail official during and after an incident."), *appeal dismissed*, No. 21-2647 (2d Cir. Oct. 21, 2021).  With that said, "[c]ourts in this circuit generally require that the plaintiff demonstrate that the defendants 'engaged in egregious conduct' to prevail on a challenge to a contraband search, and 'even where inmates allege aggressive or inappropriate behavior during strip searches, courts are reluctant to find that such activity rises to the objectively serious level of an Eighth Amendment violation.'" *Torres*, 2019 WL 7602181, at *9 (citation omitted) (quoting *Holland v. City of New York*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016); and quoting *Vaughn v. Strickland*, No. 12-CV-2696, 2013 WL 3481413, at *3 (S.D.N.Y. July 11, 2013)).

In this Action, there is no dispute that on August 1, 2018, "there was a facility wide lockdown and search" at Green Haven after two corrections officers were assaulted days earlier and that all Green Haven inmates, including Plaintiff, were subject to said lockdown.  (Defs.' 56.1 ¶¶ 2–3, 16–17.)  Similarly, there is no dispute that Plaintiff refused to go through Cell Sense and thus had to be searched in an alternate manner.  (*See id.* ¶¶ 13–16.)  During his deposition, Plaintiff attested that Flanagan's touched Plaintiff's penis right after Flanagan tried to instruct Plaintiff as to how he could position himself such that Flanagan could perform the search absent physical touching.  (*See* Pl.'s Depo. Tr. 36:19–25 (describing Flanagan as saying "no, no, no, all the way up" prior to allegedly touching Plaintiff).)

Additionally, Wahlquist, Ferguson, and Ortiz testified that while they did not observe the strip frisk out of respect for Plaintiff's privacy, they did not hear any communication or conduct in line with what Plaintiff alleges nor did they receive any complaints from Plaintiff following

the search.  (*See* Powers Decl. Ex. B ("Wahlquist Decl.") ¶ 9 (Dkt. No. 86-2); *id.* Ex. C

("Ferguson Decl.") ¶ 4 (Dkt. No. 86-3); *id.* Ex. E ("Ortiz Decl.") ¶¶ 3–4 (Dkt. No. 86-5).)  Ortiz

also testified that he "did not observe any change in [Plaintiff's] appearance or any indication

that there was a problem with the frisk or that he had been assaulted in any way."  (Ortiz Decl. ¶

4.)

      Conversely, the lone allegations that speak to whether Flanagan harbored the subjective

intent of sexual gratification or humiliation is the allegation in the SAC that, upon Plaintiff's

questioning about the search Flanagan "smirked and stated, 'I thought I seen something.'"  (SAC

2.)  However, Flanagan's statement in and of itself does not demonstrate a subjective intent to

harass Plaintiff; rather, the statement evinces a penological purpose, namely determining whether

contraband exists.  *See Holland*, 197 F. Supp. 3d at 546 (stating that "[t]he legitimate penological

purpose of strip searches" is "to discover hidden weapons and contraband" (quoting

*Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988)).  While Plaintiff's allegation that

Flanagan "smirked," when rendered alongside the statement, *could* evince an intent to harass

Plaintiff, Plaintiff does not substantiate this allegation in any way, having repeated in his

deposition that Flanagan made a comment but omitting any reference to a smirk or facial

expression.  (*See* Pl.'s Depo. Tr. 36:21–38:5.)  And as has been held by other district courts in

the Second Circuit, including in the context of a § 1983 action for an alleged constitutional

violation, "a non[-]moving party's self-serving statement, without direct or circumstantial

evidence to support the charge, is insufficient to defeat a motion for summary judgment."

*Wheeler v. Kolek*, No. 16-CV-7441, 2020 WL 6726947, at *8 (S.D.N.Y. Nov. 16, 2020) (quoting

*Walker v. Carter*, 210 F. Supp. 3d 487, 503 (S.D.N.Y. 2016)); *JF v. Carmel Cent. Sch. Dist.*, 168

F. Supp. 3d 609, 616 (S.D.N.Y. 2016) (same); *New World Sols., Inc. v. NameMedia Inc.*, 150 F.

Supp. 3d 287, 326 (S.D.N.Y. 2015) ("[U]nsubstantiated and self-serving testimony is insufficient, without more, to defeat summary judgment.").  Accordingly, Plaintiff fails to show a genuine issue of material fact exists as to Flanagan's subjective intent, and thus, whether an Eighth Amendment violation occurred.

Assuming arguendo that the subjective requirement was satisfied, however, the alleged sexual assault nonetheless fails to meet the objective requirement of an Eighth Amendment claim.  Plaintiff does not offer a specific timeframe for the duration of this inappropriate touching; however, the Court has no reason to infer that the touch lasted more than a fleeting moment, as Plaintiff seemingly got upset as soon as Flanagan allegedly touched Plaintiff.  (*See* Pl.'s Depo Tr. 35:21–36:2 (alleging that, as soon as Flanagan "poke[d]" Plaintiff's genitalia, Plaintiff "turned around" and "looked at [Flanagan]").)  District courts in the Second Circuit have held that brief touching of an inmate's genitalia—especially during the course of a strip search—fails to rise to the objective level of an Eighth Amendment violation.  *See, e.g., Washington v. Piper*, No. 18-CV-7783, 2019 WL 6343516, at *5 (S.D.N.Y. Nov. 26, 2019) (holding that "a poke to the groin while he was in inside of his housing unit fail" does not meet the objective standard of a constitutional violation); *Holloway v. Dep't of Corr.*, No. 11-CV-1290, 2013 WL 4834657, at *8 (D. Conn. Sept. 10, 2013) (dismissing a claim because the "brief instance of alleged sexual touching was not severe enough to constitute a serious deprivation of the plaintiff's life's necessities"); *Harry v. Suarez*, No. 10-CV-6756, 2012 WL 2053533, at *3 (S.D.N.Y. June 4, 2012) (granting a motion for summary judgment in favor of a defendant prison official where the plaintiff alleged that the official "groped [the inmate's] genitals, buttocks, and inner thighs for up to fifty three seconds in the course of a frisk" because it failed to state an Eighth Amendment claim); *Banks v. William*, No. 11-CV-8667, 2012 WL 4761502, at *4

27

(S.D.N.Y. Sept. 27, 2012) ("In this case, [the plaintiff] alleges that [the defendant] fondled him on a single occasion during a pat-down frisk . . . . Since [the defendant's] alleged conduct did not involve a severe or repetitive pattern of abuse, it is insufficient to form the basis of a claim on which relief can be granted in federal court."), *report and recommendation adopted*, 2013 WL 764768 (S.D.N.Y. Feb. 28, 2013); *Garcia v. Watts*, No. 08-CV-7778, 2009 WL 2777085, at *7 (S.D.N.Y. Sept. 1, 2009) (collecting cases to show that "courts in this Circuit have routinely dismissed claims involving isolated instances of allegations of fondling and groping . . . as insufficient to sustain an Eighth Amendment claim"); *Morrison v. Cortright*, 397 F. Supp. 2d 424, 425 (W.D.N.Y. 2005) (concluding that no Eighth Amendment violation occurred where a prison official shone light up an inmate's anus, ran a finger between an inmate's buttocks causing inmate to urinate on himself, and briefly pressed the inmate's genitals against the inmate's own buttocks during strip search); *Montero v. Crusie*, 153 F. Supp. 2d 368, 375 (S.D.N.Y. 2001) (concluding that no Eighth Amendment violation occurred where, on several occasions, prison officials briefly squeezed an inmate's genitalia while performing strip searches); *cf. Boddie v. DeWald*, No. 94-CV-2538, 1996 WL 164681, at *1–2 (S.D.N.Y. Apr. 9, 1996), *aff'd sub nom. Boddie v. Schnieder*, 105 F.3d 857, 859–61 (2d Cir. 1997) (affirming a district court's granting of a motion to dismiss where a male prisoner alleged that a female correction officer made an inappropriate "pass" at him, "squeezed his hand, touched his penis," called him a "sexy black devil," pressed her breasts against his chest more than once, and pushed her "vagina against [his] penis" as failing to meet the objective requirement of an Eighth Amendment violation).  The Court sees no reason to hold otherwise, as the brief touching alleged in this Action—particularly in the context of a strip search—simply does "not involve a harm of federal constitutional proportions as defined by the Supreme Court."  *Boddie*, 105 F.3d at 861.

In sum, "no rational jury could conclude that the prison officials' search of [Plaintiff] violated Eighth Amendment." *Arnold v. Westchester Cnty.*, No. 09-CV-3727, 2012 WL 336129, at *11 (S.D.N.Y. Feb. 3, 2012), *report and recommendation adopted*, 2012 WL 841484 (S.D.N.Y. Mar. 13, 2012); *Sankara v. O'Hara*, No. 15-CV-7761, 2017 WL 6001841, at *6 (S.D.N.Y. Dec. 4, 2017) (holding that allegations that correctional officers strip searched and then "digitally penetrated" plaintiff could not constitute an Eighth Amendment violation where officers had a "legitimate interest in locating drugs or weapons," and there was "no allegation that the search occurred for purposes of sexual gratification or humiliation"), *appeal dismissed*, No. 17-4052, 2018 WL 3031132 (2d Cir. May 17, 2018); *Montero*, 153 F. Supp. 2d at 375 (concluding that no Eighth Amendment violation occurred where, on several occasions, prison official squeezed an inmate's genitalia while performing strip searches); *cf. Yunus v. Jones*, No. 16-CV-1282, 2019 WL 5196982, at *9–12 (N.D.N.Y. June 21, 2019) (denying summary judgment because a reasonable jury could conclude that the defendants' actions during pat frisks, where they stuck fingers into the plaintiff's rectum and threatened to rape him using racially charged terms, were not good faith efforts to maintain discipline), *report and recommendation adopted*, 2019 WL 4010260 (N.D.N.Y. Aug. 26, 2019).  Accordingly, Defendants' Motion regarding Plaintiff's claim of sexual assault against Flanagan must be granted.

## ii.  Intertwined Non-Sexual Assault

With respect to the other alleged misconduct intertwined with the alleged sexual misconduct—specifically, that Plaintiff was punched in the face and pushed into a wall— Defendants argue that the actions in question—to the extent they occurred—fail to satisfy the objective standard and thus do not constitute an Eighth Amendment violation.  (*See* Defs.' Mem. 8–10; Defs.' Reply Mem. 4–5.)

There exist no medical records to substantiate Plaintiff's version of events regarding the punch and push.  Plaintiff's medical records show that at the time Plaintiff received medical attention, Plaintiff reported only pain in his knee and back and that "no further action [was] to be taken from medical."  (DOCCS Medical Records 41, 40).  By contrast, Plaintiff alleged in the SAC that he was "repeatedly" punched "in the face and chest."  (SAC 3.)  Plaintiff stated in his deposition that he was punched in the face and hit in the chest.  (Pl.'s Depo. Tr. 38:2–15.)  But, simply put, "there [is] no evidence in the record of any injury to that part of Plaintiff's body." *Thomas v. Jacobs*, No. 19-CV-6554, 2022 WL 504787, at *11 (S.D.N.Y. Feb. 17, 2022).[7] Moreover, "[t]here are no documented notes of follow up treatment, or Plaintiff returning to medical care a week or month later.  The alleged injuries are never mentioned again."  (Defs.' Mem. 9; *see also* DOCCS Medical Records 40–41.)[8, 9]

Plaintiff tries to rebut this by stating in his deposition that he asked to go to medical on the day of the assault and that his medical visit occurred as soon as he could.  (*See* Pl.'s Depo. Tr. 40:18–43:16.)  There is no evidence of this, and, once again, "a non[-]moving party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient

---

[7] As stated above, one of the non-sexual assault allegations pertains to Plaintiff being pushed against the wall.  (*See* Pl.'s Depo. Tr. 38:23–25.)  However, during his deposition, Plaintiff does not articulate, or even intimate, what part of his body, if any, was injured during this incident.  (*See id.*)  Therefore, the Court cannot make any connection between the injuries discussed in Plaintiff's medical records and that specific act.

[8] Because there appear to be two different Bates stamps on Defendants' Exhibit, the Court refers to the ECF-stamp on the top right-hand corner of the document, *not* the stamp numbers the Parties placed on the bottom of the documents.

[9] It is also worth noting that Plaintiff tied his knee and back pain *both* to having been pushed "down the last 6 steps," (Pl.'s Depo. Tr. 45:1–12), as well as to "a previous injury to [P]laintiff's knee and back," (SAC 2).  In other words, Plaintiff's known injuries emanate either from a previous injury not at issue here, (*see id.*), or from the misconduct previously dismissed for failure to exhaust his administrative remedies, *see supra* II.B.1.b.

to defeat a motion for summary judgment." *Wheeler*, 2020 WL 6726947, at *8 (quoting *Walker*, 210 F. Supp. 3d at 503).

The upshot of Plaintiff's medical records—namely the lack of long-lasting injuries where the alleged excessive force was to have occurred—militates toward a finding that if any force was used, it was, at most, de minimis, thereby failing to satisfy the objective prong of an Eighth Amendment violation. *See Pedroza v. Panzarella*, No. 18-CV-3320, 2021 WL 3621808, at *6 (S.D.N.Y. Aug. 16, 2021) ("At bottom, '[t]he undisputed evidence demonstrates the insignificance of Plaintiff's injuries and the fact that the medical records completely undermine [the] [p]laintiff's allegations' that [the defendants'] use of force was more than de minimis.'" (italics omitted) (quoting *Perry v. Stephens*, 659 F. Supp. 2d 577, 583 (S.D.N.Y. 2009)); *see also Larkins v. Selsky*, No. 04-CV-5900, 2008 WL 2736015, at *5 (S.D.N.Y. July 7, 2008) (same); *Gashi v. County of Westchester*, No. 02-CV-6934, 2007 WL 749684, at *6 (S.D.N.Y. Mar. 12, 2007) ("The insignificance of [the] plaintiff's injuries and the fact that the medical records completely undermine his allegations, as to the ferociousness of the violence allegedly perpetrated against him, warrant a finding that the force used was de minimis as a matter of law."); *Bove v. New York City*, No. 98-CV-8800, 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) ("Given the conflicting accounts of what exactly happened outside of defendant Blinn's door in the early morning of December 18, 1995—the plaintiff's allegations of a brutal beating versus the defendants' view that no such incident took place—it might appear at first blush that this factual dispute would preclude summary judgment. However, the plaintiff's alleged injuries that are supported by the objective hospital records lead me to conclude that, as a matter of law, the force—if any—used by the NYPD on the night in question was at worst, de minimis, and insufficient to shock this Court's conscience.").

Plaintiff concession during his deposition recognizing that the push and the punch to the face were undertaken "[i]n order to make [him] comply," (Pl.'s Depo. Tr. 38:5), is also notable as compelling Defendants' Motion be granted.  As the Supreme Court makes clear, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *Hudson*, 503 U.S. at 7 (alteration in original) (quoting *Whitley*, 475 U.S. at 321–22).  For that reason, where force was "'applied in a good-faith effort to maintain or restore discipline,' it is unlikely to be repugnant to the conscience of mankind, and will not amount to excessive force under Second Circuit law."  *Adilovic*, 2011 WL 2893101, at *6 n.12 (citation omitted) (quoting *Sims*, 230 F.3d at 21).

Courts in the Second Circuit have repeatedly found analogous injuries—a glance to the face and or an isolated push—objectively lacking with regard to the objective prong of the Eighth Amendment inquiry when sustained from a prison official seeking to ensure a prisoner's compliance.  *See Pedroza*, 2021 WL 3621808, at *5 (finding "[the] [p]laintiff's scrapes and bruises are the sorts of minimal injuries that routinely support a finding of a de minimis use of force, and therefore fail to satisfy the objective prong for claims of Eighth Amendment violations . . . particularly given the context in which [the] [d]efendants used such force," namely where the plaintiff "refused to comply with [the defendants'] orders" (italics omitted)); *Adilovic*, 2011 WL 2893101, at *7 (collecting cases of comparable alleged use of force in cases regarding isolated bruising, minimal pain, and no long-term damage following an inmate's refusal to comply with orders).  Because there exists no genuine dispute of fact as to whether Defendants' non-sexual force met the objective prong required of an Eighth Amendment violation,

Defendants' Motion as to all instances of force is granted, and Plaintiff's Eighth Amendment claims pertaining thereto are dismissed against Flanagan.[10]

### 3.  Annucci and Supervisory Control

Defendants argue that summary judgment is appropriate for Plaintiff's claims against Annucci for lack of personal involvement.  (*See* Defs.' Mem. 5–6.)  Plaintiff does not substantively grapple with this argument.  (*See generally* Pl.'s Opp. I; Pl.'s Opp. II; Pl.'s Sur-Reply.)  Defendants argue that this demands the Court deem such claims abandoned, (*see* Defs.' Reply 5–6), but the Court will nevertheless "consider the motion on the merits because [P]laintiff is proceeding pro se," *Hazelwood v. Monroe*, No. 95-CV-3648, 1996 WL 312355, at *1 (S.D.N.Y. June 11, 1996) (italics omitted).[11]

To establish personal involvement, a plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676

---

[10] In his Amended Complaint, Plaintiff alleged that Ferguson was also involved in pushing his face into the wall.  (*See* Am. Compl. 3–4 (Dkt. No. 25).)  Plaintiff does not repeat this allegation in the SAC, (*see generally* SAC), but to the extent the Court would consider him having done so, it is dismissed for the same reasons identified above regarding a lack of medical documentation or other objective evidence leading to a conclusion of de minimis force failing to meet the objective prong of an Eighth Amendment violation.

[11] It is true that a court may draw an even stronger inference of abandonment when a plaintiff responds to certain arguments in a motion but not others.  *See Kovaco v. Rockbestos–Surprenant Cable Corp.*, 834 F.3d 128, 144 (2d Cir. 2016) (upholding an inference of abandonment when party moved for summary judgment on all claims and non-moving party opposed motion with respect to all but one variety of claim); *Jackson v. Federal Express*, 766 F.3d 189, 196 (2d Cir. 2014) (upholding inference of abandonment where plaintiff fully responded to defendant's proposed undisputed facts and opposition brief argued against grant of summary judgment only as to one claim).  However, the Second Circuit has stated that this reasoning applies to "a counseled party." *Jackson*, 766 F.3d at 196.  Indeed, a pro se plaintiff without legal training cannot be said to be aware of the nuances of motions practice and abandonment doctrine.  The Court's decision to disregard abandonment arguments similarly extends to Plaintiff's claims against Wahlquist, Blot, and Ferguson.

(2009)).  As the Second Circuit recently stated in *Tangreti*, "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary."  *Id.* at 618 (second alteration in original) (quotation marks omitted).  Therefore, "[t]he violation must be established against the supervisory official directly" through his or her own individual conduct as it relates to the specific, underlying offenses at issue.  *Id.*

In this Action, Plaintiff alleges that Annucci is "well aware of the assaults on inmates by staff" and is "well aware of this ongoing culture of assaults against prisoners by his officers." (SAC 5, 6.)  Further, in his deposition, Plaintiff stated that Annucci is "allowing [the] practice to go on . . . that he knows is taking place[.]"  (Pl.'s Depo. Tr. 49:5–7.)  No objective evidence substantiates Plaintiff's claims that Annucci was aware, let alone sanctioned, the conduct alleged, however.

A nonmoving plaintiff "may not reply upon conclusory allegations or denials, but instead must produce evidence in admissible form, setting forth 'concrete particulars' showing that a trial is needed."  *Yevstifeev v. Steve*, 860 F. Supp. 2d 217, 220 (W.D.N.Y. 2012) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)).  Indeed, "even where the non-movant is pro se, mere 'conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.'"  *Read v. Town of Suffern Police Dep't*, No. 10-CV-9042, 2013 WL 3193413, at *3 (S.D.N.Y. June 25, 2013) (italics omitted) (quoting *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).  Accordingly, "Plaintiff's conclusory allegation that [regarding Annucci's ordering, sanctioning, or even awareness of any inappropriate conduct] does not create a genuine issue of material fact."  *Thomas v. Picio*, No. 04-CV-3174, 2008 WL 820740, at *4 (S.D.N.Y. Mar. 26, 2008).  Defendants' Motion with

respect to Annucci is granted, and Plaintiff's claims against Annucci therefore must be dismissed.

### 4.  Blot, Wahlquist, Ferguson

Plaintiff alleges that Blot ordered the strip frisk search and intimates that Blot may have conspired, or at least encouraged, Plaintiff's mistreatment.  (SAC 2.)  Plaintiff also alleges that Wahlquist was in the room during the search and blocked personnel from OSI from entering the room.  (*See* SAC 3; *see also* Pl.'s Depo. Tr. 32:8–13.)  Finally, Plaintiff also alleges that Ferguson waited outside the room in which the search occurred.  (*See* SAC 3.)  Defendants argue that Plaintiff fails to adequately allege personal involvement in the sexual and non-sexual assault at issue for each of these three individuals.  (Defs.' Mem. 6.)  Defendants also argue that, to the extent the Court interprets Plaintiff as making a failure to protect claim, such a claim must be dismissed citing a lack of awareness by which to know to intervene or protect Plaintiff.  (*See id.* at 6–7.)  The Court agrees with Defendants as to both arguments.

"Personal involvement in an alleged violation cannot exist where there is no alleged violation."  *Woods v. Goord*, No. 01-CV-3255, 2002 WL 731691, at *7 n.12 (S.D.N.Y. Apr. 23, 2002).  By this same logic, "there can be no failure to intervene claim without a primary constitutional violation."  *Forney v. Forney*, 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015) (citation omitted).  Having concluded that no constitutional violation occurred with respect to Plaintiff's strip frisk search, *see supra* II.B.1.d.i, Blot, Wahlquist, and Ferguson cannot be said to have been

involved in any constitutional wrongdoing nor to have failed to intervene or protect Plaintiff.[12, 13]
Therefore, Defendants' Motion with respect to Plaintiff's claims against Blot, Wahlquist, and
Ferguson is granted.

---

[12] The Court recognizes that, in its prior decision, Plaintiff's claim against Blot on this issue survived a motion to dismiss, (*see* Op. 12–13), and that the law of the case doctrine holds that, "'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case' unless 'cogent and compelling reasons militate otherwise,'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 473 (S.D.N.Y. 2014) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)); *see also Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quotations and citations omitted)).  However, in its prior ruling, the Court did not consider arguments regarding the sufficiency of the underlying claim, nor did the Court consider Defendants' affirmative defense of administrative exhaustion with respect to the assault(s) at issue.  (*See generally* Moving Defs.' Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 38); Moving Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss (Dkt. No. 40).)  Thus, not only is "[t]he law of the case doctrine '. . . at best, a discretionary doctrine, which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided,'" *Paciello v. Unum Life Ins. Co. of Am.*, 188 F.R.D. 201, 204 (S.D.N.Y. 1999) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997)), *aff'd*, 213 F.3d 626 (2d Cir. 2000), but it is also not applicable here.

[13] Moreover, to the extent Plaintiff's SAC could be interpreted to also raise failure to intervene or protect claims against Blot and Ferguson for failure to protect regarding the alleged push down the stairs, those claims must be dismissed under the same failure to exhaust rationale described at length above.  *See supra* II.B.1.b.ii.

<u>III.  Conclusion</u>

For the foregoing reasons, Defendants' Motion is granted.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 84), enter judgment for Defendants, mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket, and close this case.

SO ORDERED.

DATED:     September 20, 2022
                   White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE